**In re Derek J. RAINER, Debtor.**

**Morris L. Horwitz as trustee in bankruptcy of Rainer, Plaintiff.**

v.

**Green Tree Financial Corporation, Defendant.**

**In re Shane M. Hovland and Melanie Hovland, Debtors.**

**Morris L. Horwitz, as trustee in bankruptcy of Hovland, Plaintiff,**

v.

**Green Tree Financial Corporation, Defendant.**

**Bankruptcy Nos. 98–15752 K, 98–15929 K.**
**Adversary Nos. 99–1209 K, 99–1210 K.**

United States Bankruptcy Court, W.D. New York.

Feb. 2, 2000.

**12**

Morris L. Horwitz, Horwitz, Frankel & Ilecki, Tonawanda, for Plaintiff.

Kevin Laurilliard, McNamee, Lochner, Titus & Williams, P.C., Albany, for Green Tree Financial Corporation.

John C. Krenitsky, Buffalo, M & T Bank, on an Amicus Brief.

MICHAEL J. KAPLAN, Chief Judge.

The Debtors here count among their "toys" a four-wheeled off-the-road ATV (all terrain vehicle) (Hovland) and a Sea Doo-brand PWC (personal watercraft) (Rainer).

The purchase money lender (coincidentally the same in the two otherwise unrelated cases) did not file financing statements because, it claims, these items are "consumer goods" that are not "motor vehicles" for purposes of UCC § 9–302(1)(d). And it derives that result from a definition of "motor vehicle" contained in a different

body of state statutes, dealing specifically with vehicles and traffic. The question is whether the liens are perfected as against the Chapter 7 Trustee's status as a hypothetical judgment lien creditor as set forth in 11 U.S.C. § 544. The lender is the same in each case. It has moved to dismiss under Rule 12(b)(6). The Court deems the motion to be a motion for summary judgment under Rule 56, because there is no disagreement as to any of the salient facts. Similarly, each of the Trustee's "Request[s] for Affirmative Relief" is deemed a cross-motion for summary judgment. The two Adversary Proceedings have been jointly briefed (including an amicus brief submitted by M & T Bank) and are consolidated here for purposes of decision.

The Court holds: (1) ATVs are not excluded from the "title" requirement of state law, and so should be governed by that law rather than by the UCC; however (2) the Commissioner of Motor Vehicles does not make provision for "titling" of ATVs; and consequently, (3) the ATV will be viewed as a UCC issue only. Furthermore, (4) because the PWC is (presumably) of less than fourteen feet in length, it is clearly exempt from "titling" and is, thus, also a UCC issue only. (5) The Trustee is entirely correct in his argument that the term "motor vehicle" as used in § 9–302(1)(d) is wholly independent from definitions of that term used in the state's "Vehicle and Traffic Law," but (6) the UCC § 1–102(1) and (2) command to construe the UCC so as to "clarify" and "simplify" the law governing commercial transactions, convinces the Court that the "Vehicle and Traffic Law" definition serves as an invaluable "rule of convenience" which, if adopted for UCC purposes will avoid confusion, promote clarity and simplicity, and avoid inconsistent results as among the UCC and other state laws dealing with insurance and liability, transfers of registration, and owners and operators.

Thus, the Court rules for the lender not as a matter of law, but as a rule of convenience.

### 1. ATVs SHOULD BE "TITLED," BUT ARE NOT

To the extent that the parties have framed the matter as a UCC § 9–302(1)(d)[1] question—Are an ATV and PWC "consumer goods," but not "motor vehicles," so that filing is not required?—that question should be academic as to the ATV. By statute, ATVs are supposed to be "titled," and until September 7, 1999, both UCC § 9–302(4)[2] and New York Vehicle and Traffic Law § 2118(a)[3] made it clear that if a vehicle must be "titled" in New

---

1. New York UCC § 9–302(1)(D) provides: "A financing statement must be filed to perfect all security interests except ... a purchase money security interest in consumer goods; but filing is required to perfect such a security interest in a motor vehicle required to be licensed or registered in this state unless it is perfected in accordance with Article 46 of the Vehicle and Traffic Law ..." (McKinney 1999 supp.).

2. New York UCC § 9–302(4) provides, in pertinent part: "... a security interest in property subject to [Article 46 of the Vehicle and Traffic Law] can be perfected only by compliance therewith ..." (McKinney 1990).

3. Until September 7, 1999, New York Vehicle and Traffic Law § 2118(a) provided, in pertinent part: "a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle without knowledge of the security interest unless perfected as provided in this section." (McKinney 1996).

Effective as to "security interests in existence on or after" September 7, 1999, the provision instead reads: "(a) Unless excepted by section two thousand one hundred three of this title, a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle without knowledge of the security interest unless perfected as provided in this section. A purchase money security interest in a vehicle is perfected against the rights of judicial lien creditors and execution creditors on and after the date such purchase money security interest is created."

York, then it was only by perfecting under Article 46 of the Vehicle and Traffic Law (which provides for title certificates and for disclosure of lienholders on the title certificates) that one could be perfected. And it was evident under three other provisions of New York Law that the ATV was required to be "titled:" Section 159 of the Vehicle and Traffic Law,[4] Vehicle and Traffic Law § 2104(a),[5] and the term "vehicle" as used in the latter is defined in accordance with the former by virtue of a third provision, § 2101(n).[6]

Section 2102 of the Vehicle and Traffic Law provides for "exclusions" from the title requirement. One finds that "any vessel under 14 feet in length" is so excluded. See New York Vehicle and Traffic Law § 2102(a)(16). Thus, the issue as to the PWC (which is, presumably, under 14 feet in length) remains a UCC issue. But one finds no exclusion for ATVs in § 2102 despite the fact that the existence of ATVs is expressly recognized in an article of the New York Vehicle and Traffic Law devoted exclusively to ATVs (Article 48–B), and despite the fact that other recreational vehicles such as snowmobiles and off-highway motorcycles are expressly excluded from the title requirement by § 2102.

Assuming for the moment that the September 7, 1999 amendment to the Vehicle and Traffic Law (see footnote 3 above) cannot benefit a lender who was asked prior to that date to accede to the Trustee's § 544 status, the Court should not need to go further with regard to the ATV. The Trustee's Complaint as to the ATV

was filed on July 27, 1999, and failure to perfect under the V & T Law would be fatal to the lien, as against the Trustee. So that should be that. However, the Court takes judicial notice that the State does not have a method to "title" on ATVs, and ownership transfers are handled only by signing over the registration certificates under V & T Law § 2285(4) (McKinney 1996). And, of course, the effect of the September 7, 1999 amendment should not be presumed either. So the Court will proceed with an analysis of the other "toy" here, the PWC, which analysis will also lead the Court also to reject the lender's UCC argument as to the ATV.

## 2. VESSELS ARE NOT MOTOR VEHICLES

■ It is the law of this state that any vessel, power or otherwise, and regardless of size, is subject to regulation by the Commissioner of Motor Vehicles. Thus, New York Vehicle and Traffic Law § 2250 states, in pertinent part, "for purposes of this article [Article 48 of the V & T Law], a vessel shall be every description of water craft, other than a sea plane, used or capable of being used as a means of transportation on water. A vessel propelled by an outboard motor shall include the hull, but shall not include the outboard motor." (McKinney 1996). But, as noted above, "title" is required only as to vessels that are 14 feet or longer. This is not surprising. Personal water craft are a relatively recent development, and PWCs having

---

4. New York Vehicle and Traffic Law § 159 provides that the word "vehicle" means "Every device in, upon, or by which any person or property is or *may be* transported or drawn upon a, highway, except devices moved by human power or used exclusively upon stationary rails or tracks." (McKinney 1996) [emphasis added].

5. New York Vehicle and Traffic Law § 2104(a) requires that "Every owner of a vehicle which is in this state and is not excluded from provisions of this title by [§ 2102] ... shall make application to the [C]ommissioner [of Motor Vehicles] for a cer-

tificate of title of the vehicle within 30 days after transfer to him of the vehicle." (McKinney 1996).

6. New York Vehicle and Traffic Law § 2101(n) provides, in pertinent part: " 'Vehicle' means a vehicle as defined in § 159 of this chapter ... and, except with respect to § 2102 of this Article, shall also mean a vessel as defined in § 2250 of this chapter. Unless otherwise specified, 'vehicle' also means a 'mobile home' or a 'manufactured home' as defined in § 122–c of this chapter." (McKinney 1996).

such significant resale value as to attract the interest of bankruptcy trustees is even more recent. At the time the 14–foot limitation was enacted by the New York Legislature (at least 15 years ago) there were few, if any, PWCs as we know them, and consequently there were few "valuable" vessels of that size, when one excludes an outboard motor from the hull, as the definition contemplated.

Now PWCs (most of which are under 14 feet in length), regularly cost $8,000, $10,-000, or even $15,000 "new," and may be worth several thousand dollars "used." And they have become so popular that proper filing under the UCC may well be a substantial administrative cost for volume-lenders and volume-lender/sellers. They would much prefer that the decision to file or not to file be a choice they only make in connection with whether they wish to cut-off a bona fide purchaser for personal use and without knowledge. See UCC § 9–307(2).[7]

So we turn to the argument that the lender need not file on a PWC because of UCC § 9–302(1)(d).

As promulgated by the Commission on Uniform State Laws prior to 1962, the pertinent portion of UCC § 9–302(1)(d) read:

"1. A financing statement must be filed to perfect all security interests except the following:

"(d) A purchase money security interest in consumer goods; but filing is required for a motor vehicle required to be registered; ..."

See 2 UCC Reporting Service, ¶ 9–302.

The State of New York adopted the provision in 1962 and amended it in 1963 and 1964 to state:

"(1) [same as above]

. . .

"(d) A purchase money security interest in consumer goods; but filing is required to perfect such a security interest in a motor vehicle required to be licensed or registered in this state; ..."

N.Y. Commission Comments accompanying UCC § 9–302 (McKinney 1990).

The New York Commission on the Uniform Code commented: "The [addition] of 'or registered in this state' to [¶ (d) conforms] the Code to New York statutory terminology." *Id.*

New York was not a motor vehicle "title" state at that time. Nonetheless, most vehicles were subject to regulation in connection with registration, safety equipment, required insurance coverage, licensing of operators, and the like, and there was a body of "New York Vehicle and Traffic Law" in effect at the time. Importantly, no reference was made to the New York Vehicle and Traffic Law even though that "title" of the state Code of Laws did exist when the Legislature amended the pertinent provision of the UCC to conform the provision "to New York statutory terminology."

There apparently were some "vehicles" that were not "motor vehicles" but which were nonetheless covered by the Vehicle and Traffic Law as early as 1959, because §§ 125[8] and 159[9] of the current New York Vehicle and Traffic Law were enacted in 1959 and were "derived" from earlier law. So at least as early as 1959, "motor vehicles" were a recognized subcategory of a larger group of "vehicles."

---

7. New York UCC § 9–307(2) states: "In the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods." (McKinney 1990).

8. New York Vehicle and Traffic Law 125 defines "motor vehicle" and expressly excludes snowmobiles and ATV's, among other things.

9. Defining "vehicle"; see footnote 4 above.

Provisions for the registration of snowmobiles, vessels, ATVs and other recently-popularized types of vehicles were added to the New York Vehicle and Traffic Law in 1973, 1976, 1985 and other years. Such vehicles initially had only military or commercial uses [10] but now are popular "consumer goods" as well. "Motor vehicles" is currently defined in the New York State Vehicle and Traffic Law as meaning every "vehicle" that is "operated or driven upon a public highway" and which is propelled by any power other than muscular power, with certain enumerated exceptions. Clearly, for purposes of the Vehicle and Traffic Law, a vessel could not be a "motor vehicle." It is not even a "vehicle" in that body of law, which defines "vehicle" as every device in, upon, or by which any person or property "is or may be transferred or drawn upon a highway," except devices moved by human power or used exclusively upon stationary rails or tracks. New York Vehicle and Traffic Law § 159.

Thus, the lender argues that even though "vessels" now must be registered in this state pursuant to the Vehicle and Traffic Law, they are not "motor vehicles" required to be registered in this state, for purposes of the Vehicle and Traffic Law. And so, they argue, vessels (at least vessels under fourteen feet in length) are not motor vehicles for purposes of the Uniform Commercial Code either.

For his part, the Trustee argues that the term "motor vehicle" as used in UCC § 9–302(1)(d) was a generic term, not a term of art defined by reference to the Vehicle and Traffic Law. These are two different bodies of law. The New York Vehicle and Traffic Law defines the term "vehicle" and "motor vehicle" in relation to things that move upon the highways in a form other than as freight. But the term as used in the Uniform Commercial Code had a broader intention, he argues. Any

pleasure boat would certainly fit any *dictionary* definition of "vehicle," and if it is powered by a motor it is obviously a *"motor* vehicle." And he argues that the legislative history of this provision of the Uniform Commercial Code evinces concern not just for automobiles and trucks and the like, but for any particularly valuable motorized item of "consumer goods" against which a non-purchase-money lender might actually be enticed to grant a loan on the basis of a lien, and therefore would value the ability to search dispositively for prior liens.

What was the purpose of § 9–302(1)(d)? Before the adoption of the UCC, unfiled conditional sales contracts in this state were ineffective against a secondary lienor who was first to file as against, a judgment creditor, a bankruptcy trustee, or a dealer taking the goods as a trade-in. But filing on small consumer contracts was thought to be expensive and, as to most such contracts, unnecessary because secondary lenders did not really count on these items as having much value as "security." Thus, as stated by one commentator as to an early version of the New York Commercial Code, "Consumer motor vehicles are considered to be so important a type of product that filing is required even for purchase money security interests thereon." Homer Kripke, Practice Commentary, accompanying N.Y. UCC § 9–302 (McKinney 1964). And there is no basis in law, argues the Trustee, to superimpose the Vehicle and Traffic Law definition of "motor vehicle" on this provision of the Uniform Commercial Code.

■ The Trustee's argument is correct as far as it goes. The Court agrees that the definition of "motor vehicle" contained in the Vehicle and Traffic Law is irrelevant to defining the term as it appears in the Uniform Commercial Code (except to the extent that the Vehicle and Traffic Law

---

**10.** Whether "vessels" were originally commercial or "household" is obscure. But snowmobiles are derived from the large snow-going vehicles used at ski areas, in the military, in expeditions or search and rescue. Logging, mining and similar industries developed all-terrain vehicles.

definitions compel perfection under the Vehicle and Traffic Law rather than the UCC). There is no evidence that the drafters of the UCC were concerned about headlights and stoplights, passenger safety, or other such attributes when they used the term "motor vehicle." Rather, they were concerned only with the facts that (1) motor vehicles are common "consumer goods," (2) they have substantial loan value or resale value, even when "used," and (3) some states were already using "registration" as a centralized "title" mechanism, to the exclusion of county-by-county filings.

The Court finds that the Commission on Uniform State Laws, or the State's own commission, or the State Legislature would not have failed to use the term "vessel" or "boat" anywhere in any of their discussions of what was a marked change in prior practice, if they intended vessels to be subsumed in the term "motor vehicles." Rather, it is likely (without researching the prevalence of title laws for vessels in other states at the time of the promulgation of the UCC), that the intendment of the UCC provision was to give deference to the growing practice of requiring titling of cars and trucks. The UCC called cars and trucks "motor vehicles." If any state had title laws pertaining to vessels and if the intention of § 9–302(1)(d) was to displace the UCC in favor thereof, it is not conceivable to this writer that there would be no mention made of "vessels" or "boats" in the legislative history to the provision.

Further, the "plain meaning" of a statute must be placed in its historic context. Whatever the term "motor vehicle" might evoke in the mind of the reader today, this writer personally recalls there being no nautical connotation to the phrase "motor vehicle" as that term was used in common parlance even in maritime states in the early 1960's. This writer knows that in the 60's, "motor vehicle" did not mean "motorized vehicle" in common parlance. Rather it referred to cars, trucks, motorcycles, and the other motorized means of roadway transport that families and businesses were required to register, and which could not be operated without a driver's license. Vessels big and small were an entirely different matter.

The Motion to Dismiss in Rainer, deemed to be a Motion for Summary Judgment, must be granted because (1) a vessel under 14 feet is not required to be titled and (2) UCC § 9–302(1)(d) speaks of "motor vehicles," as distinguished from "vessels" or "boats" in the early 1960's when it was adopted and revised. (It is also worthy of note that in all the years since then, despite constant legislative revisiting of the UCC, and despite § 9–302(4)'s subordination of Article 9 to the title provisions of the Vehicle and Traffic Law (see footnote 2 above), no reference to the Vehicle and Traffic Law has been added to § 9–302(1)(d).)

## 3. THE ATV SHOULD BE SUBJECT TO A FILING REQUIREMENT

As to the ATV, the Court finds that under the above analysis, an ATV (which in UCC terms— plain terms, not Vehicle & Traffic Law terms of art— is simply a recreational "downsized" version of an automobile or truck or "Jeep" or even tank, or, if you will, a three-wheel or four-wheel (or more) version of a motorcycle) is a "motor vehicle" that is not exempt from filing under § 9–302(1)(d).[11] Consequently, even though the Commissioner of Motor Vehicles apparently interprets the statutes so as not to require titling, and even after the September 7, 1999 amendment, the lender's Motion to Dismiss the Complaint in the *Hovland* case, which has been

11. The lender's mention of New York UCC § 9–312(4) in its brief is puzzling. That provision deals only with conflicting priorities among "security" interests, and security interests are creatures of contract. That provision has no relevance to the issue of the rights of a trustee as a hypothetical judgment lien creditor with execution returned unsatisfied. It is N.Y. UCC § 9–301(b) that is controlling here.

deemed to be a summary judgment motion, should be denied as to the perfection issue even under the UCC alone.[12] The cross-motion for summary judgment should be granted; however the opposite result will be reached below. An ATV probably is a "motor vehicle required to be registered or licensed in this state."

### 4. THE PURPOSES OF UCC COMPEL ADOPTION OF THE V & T LAW DEFINITION

■ All of the above being said, the UCC is an eminently pragmatic Code, and one of its purposes is to clarify, simplify and modernize the law of commercial transactions. See N.Y. UCC § 1–102 (McKinney 1993). In examining the above issues, this writer was struck by the pace at which the State has had to respond to ingenuity of mechanics. It is important to the State to know what is or is not a "motor vehicle" at any particular point in time so that it may know whether existing laws adequately assure the public safety and security. For example, a "motorized skateboard" has been found to be a "motor vehicle" in a case in which a failure so to hold would relieve the owner from having to have liability insurance coverage for damages caused by that "vehicle" on the road. *Reilley v. Dept. of Motor Vehicles of the State of New York*, 240 A.D.2d 296, 658 N.Y.S.2d 316 (1997). A similar issue has attended ATVs despite their express exclusion from the definition of "motor vehicle." See *Nationwide v. Riccadulli*, 183 A.D.2d 111, 589 N.Y.S.2d 356 (1992). Cases and statutes have had to address the safety-equipment and operator license implications of off-road vs. on-road motorcycles. "Mini-bikes" vs. motorcycles. Suburban lawn tractors vs. agricultural tractors. The use of personal golf cards for local transportation. And so forth.

The Vehicle and Traffic Law is continually revisited with a technologically-skilled eye. The UCC is not. And not just owners, but lenders too must pay heed because what must be "titled" is subject to perfection under the V & T Law and not under the UCC

Although sound law and sound analysis may sustain a "dog-law" approach to what is a "motor vehicle" for UCC purposes alone, UCC § 1–102 suffices for authority to adopt a rule of convenience.

For that reason only, and on that basis alone, this writer adopts the V & T definition of "motor vehicle" for the interpretation of that term in § 9–302(1)(d), absent compelling reason in any given and currently-unforeseen circumstance. More is done toward the goals of the UCC by this result than would be done if judges were to speculate on what the Commission on the UCC would say about new types of vehicles.

### 5. CONCLUSION

In the *Rainer* case (the PWC) judgment shall now enter in favor of the lender because the PWC is too small to require "titling" and is not a "motor vehicle" in UCC terms. In the *Hovland* (ATV) case, however, there are yet other arguments to be addressed. That case is returned to the calendar regarding the Trustee's claim of a 11 U.S.C. § 362 violation by the lender and regarding the fact that this Court rejects, as frivolous, the lender's claim that the true party defendant has not been named in the action.[13] These *Hovland*

---

12. Although this writer believes that the UCC purposes of "simplicity" and "clarity" (see UCC 1–102) are not served by a proliferation of exceptions to general rules such as the general rule that a lender need not file as to "consumer goods," that general rule is itself in derogation of the most general rule of Article 9, which is to file.

13. The Trustee named as Defendant an entity which regularly, repeatedly, and in various contexts represented itself to him and to the Debtor and Debtor's counsel to be the lienor. The appropriate way to tell the Trustee and the Court that that entity has been misrepresenting itself here is to stipulate to amend the caption of the Adversary Proceeding. The lender's suggestion that the Court should dis-

matters shall be heard at the Niagara Falls term of Court on February 17, 2000 at 10:00 a.m., at the Public Safety Building, Traffic Courtroom, 520 Hyde Park Boulevard, Niagara Falls, New York.

For the benefit of the parties in the event that review is sought, these two actions should now be deconsolidated. Judgment shall now enter for Green Tree Financial Corp. in the *Rainer* case (the PWC).

Judgment for the lender in the *Hovland* case (the ATV) shall not yet enter, and until the remaining issues are addressed, any review must be sought by request for leave to appeal an interlocutory order.

SO ORDERED.

miss the Adversary Proceeding is barely worthy of this footnote, and the Trustee's justifiably-expended effort, time and money in demonstrating the facts to the Court in this particular regard should be the subject of additional recovery for the Chapter 7 estate, beyond merely setting the unperfected lien aside.